IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLENA J. BROWN, | ) | CASE NO. 1:10-CV-305 |
| Plaintiff, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE McHARGH |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) ) ) ) | |
| Defendant. | ) ) ) | **MEMORANDUM OPINION** |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Marcellena Brown's ("Plaintiff" or "Brown") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner

## I. INTRODUCTION & PROCEDURAL HISTORY

On May 11, 2006, Plaintiff applied for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income alleging that she became disabled on February 28, 2006, due to suffering from rheumatoid arthritis, hypothyroidism and bipolar disorder (Tr. 138-43, 173).[1]

---

[1] Plaintiff previously filed applications for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income in early 2003 (Tr. 104). After both applications were denied initially and on reconsideration, a hearing was conducted before Administrative Law

Plaintiff's date last insured for purposes of her Disability Benefits application was June 30, 2006 (Tr. 154). Brown's applications for benefits were denied initially and upon reconsideration (Tr. 115-21, 123-26, 128-31). Subsequently, Plaintiff timely requested and was granted an administrative hearing (Tr. 34-38, 127).

On March 20, 2009, Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge Richard Staples (the "ALJ" or "ALJ Staples") (Tr. 56-98). Medical expert, Dr. Malcolm Brahms, appeared at the proceeding and testified via telephone (Tr. 58, 86-90). Vocational expert, Bruce Holdereid, also appeared and testified (Tr. 90-95). On April 20, 2009, the ALJ issued an unfavorable decision, in which he applied the five-step sequential evaluation,[2] and

---

Judge Thomas Gaye ("ALJ Gaye"). On March 10, 2006, ALJ Gaye denied Plaintiff's applications finding that Brown had not been under a disability from her alleged onset date through the date of his decision (Tr. 18, 104-10). Because Plaintiff did not state good cause to reopen her prior application, Administrative Law Judge Richard Staples's review was limited to determining whether Brown was disabled at any time between March 11, 2006, the day after ALJ Gaye issued his decision, and Plaintiff's date last insured, June 30, 2006 (Tr. 18).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant

2

determined that Plaintiff had not established that she suffered from a medically determined impairment, and therefore, was not disabled (Tr. 16-29). Brown requested review of the ALJ's decision from the Appeals Council (Tr. 11). The Appeals Council initially denied Plaintiff's request for review (Tr. 5-7). However, on February 22, 2010, the Appeals Council set aside its initial decision, and granted Plaintiff's request for review in order to consider additional information (Tr. 1-3). After reviewing the new evidence, the Appeals Council denied Plaintiff's request again. *Id.* Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff, born on April 22, 1980, was twenty-eight years old at the time of the hearing (Tr. 153). She earned her GED, and has past experience working as an account representative, customer representative, driver, janitor, server, stock worker, and waitress (Tr. 158).

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

---

work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  ANALYSIS

Upon performing a complete review of the record, ALJ Staples determined that Brown was not disabled under the Social Security regulations (Tr. 16-29).  At step one of the sequential evaluation analysis, the ALJ found that Brown had not engaged in substantial gainful activity since

4

March 11, 2006 (Tr. 18). At step two, ALJ Staples ruled that Plaintiff had the following severe impairments: rheumatoid arthritis, obesity, bipolar disorder and post-traumatic stress disorder. *Id.* However, ALJ Staples determined that Plaintiff's severe impairments did not individually, or in combination, meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22). Before moving to step four, the ALJ found that Brown retained the residual functional capacity ("RFC") to perform a limited range of sedentary work (Tr. 22). At step four, ALJ Staples held that Plaintiff's RFC did not permit her to perform her past relevant work (Tr. 27). Finally, at step five, the ALJ concluded that Brown was capable of performing work which existed in significant numbers in the national economy (Tr. 28-29). Specifically, the ALJ found that Brown could work as a charge account clerk, surveillance system monitor or as a weight tester (Tr. 28).

Brown challenges the ALJ's step-five finding on two grounds. First, she maintains that ALJ Staples's RFC finding did not account for the exacerbations of the symptoms linked to her rheumatoid arthritis. Second, Brown contends that the ALJ's articulation of her RFC was ambiguous with regard to the restrictions placed on her hands, thereby precluding the ALJ from relying upon the VE's answer to the hypothetical question containing this ambiguous language.

### A. Exacerbations in Plaintiff's Rheumatoid Arthritis

Plaintiff argues that ALJ Staples did not fully account for the wide ranging fluctuations associated with her rheumatoid arthritis. Several medical sources noted that Plaintiff's condition would fluctuate, including improving or worsening at times. The ME, Dr. Brahms, also confirmed that cycles of flare-ups and improvement were often experienced by someone suffering from rheumatoid arthritis (Tr. 89). During the hearing, Brown asserted that she experienced worsened

symptoms, including pain and stiffness, at least three times a week (Tr. 83). While Plaintiff's counsel was cross-examining the VE, he questioned the VE regarding the capabilities of an individual who experienced flare-ups more than two times a month (Tr. 95). In response, the VE testified that a person experiencing more than two flare-ups each month would not be able to perform any type of work. *Id.* However, the hypothetical question the ALJ posed to the VE did not reference Plaintiff's claim that she experienced frequent flare-ups. Brown argues that the ALJ's failure to include this factor in his RFC presented to the VE invalidated the ALJ's reliance upon the VE's testimony.

Plaintiff essentially takes issue with the ALJ's RFC finding because it did not include Plaintiff's claim that she suffered from flare-ups in her condition more than twice a month. Brown's argument is not well-taken. This circuit follows a two-step process in evaluating a claimant's subjective complaints of disabling symptoms. 20 C.F.R. § 416.929(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.*; *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009). The factors that the ALJ considers in making this determination include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures

used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186. It is important to note that on review this Court must accord great deference to the ALJ's credibility determinations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). This deference standard is appropriate because the ALJ had the opportunity to observe Plaintiff's demeanor while testifying. *Id.* (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).

In the instant case, ALJ Staples adequately examined Plaintiff's claims pursuant to this two-step analytical process. First, he held that Brown's impairments could reasonably be expected to cause pain, stiffness and swelling in her joints, and would interfere with her ability to lift, finger, stand, walk and concentrate depending on the amount and length of physical activity involved (Tr. 24). However, he concluded that "Brown's allegations of the intensity, persistence and functionally limiting effects of her impairments [we]re not substantiated by the objective medical evidence and non-medical evidence in th[e] record, and thus, [were] not entirely credible." *Id.* Despite Brown's claims that she suffered frequent flare-ups, ALJ Staples found that Brown's claims appeared to be exaggerated.

The ALJ contemplated several factors while evaluating the severity of Brown's symptoms. He began by noting that state agency physician, Dr. Malika Haque, opined that Brown was capable of performing work at the light exertional level despite noted swelling, pain and stiffness in Plaintiff's hands and feet caused by her rheumatoid arthritis (Tr. 380). The ALJ also considered the testimony of Dr. Brahms, the ME, who found that Brown was only capable of performing sedentary activity (Tr. 87). Considering this conflict, the ALJ expressed that he decided to give Plaintiff the

7

benefit of the doubt by accepting the ME's more restrictive opinion limiting Brown to sedentary work (Tr. 26).

Next, ALJ Staples examined Brown's activities of daily living. He commented that her daily activities did not suggest that her symptoms were as severe as she asserted. For instance, the ALJ recognized that Plaintiff was the caregiver to three young children, and that she admitted she was able to perform housework, shop, write poetry, socialize with friends and attend church three times a week. *Id.* The ALJ further highlighted that Brown had maintained a poor work record during her adult years. He affirmed ALJ Gaye's prior finding that Plaintiff's unemployed status was partly a result of her responsibility to raise three young children rather than from factors relating to her impairments. *Id.*

Additionally, ALJ Staples mentioned that the medical evidence in the record indicated that Plaintiff's symptoms were sufficiently controlled by pain medication as Brown had not been hospitalized or required emergency care due to her impairments. Furthermore, the record lacked evidence demonstrating that any of Brown's treating source's had suggested that her symptoms were incapacitating or debilitating. Instead, ALJ Staples discerned, "there [was] no record that any treating source ha[d] ever placed any work-related limitations on Ms. Brown since March 11, 2006." (Tr. 27).

Finding that Plaintiff's testimony exaggerated the severity of her symptoms, the ALJ concluded that Brown's claims were not entirely credible. Although Plaintiff accurately quoted the ME's testimony indicating that Plaintiff would not be able to perform even sedentary work during times when she experienced flare-ups (Tr. 90), Plaintiff failed to cite any medical source which confirmed the frequency of those exacerbated symptoms occurring at the frequency which Plaintiff

alleged. Because the ALJ is tasked with the duty to weigh the evidence and make credibility findings, it was incumbent upon ALJ Staples to ascertain the frequency of Plaintiff's flare-ups. *See* 20 C.F.R. § 404.1527; *Rogers*, 486 F.3d at 247-48. After considering the evidence, ALJ Stapes concluded that Brown's claims were fallacious. The undersigned finds that the ALJ enumerated sufficient reasons for discrediting Brown's credibility and discounting her claim that she suffered more than two flare-ups each month. As a consequence, the ALJ was not obligated to include Plaintiff's unsubstantiated claim in his RFC finding presented to the VE. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

### B. ALJ's Use of the Word "Repetitive"

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because his RFC finding ambiguously described Plaintiff's hand restriction. In his written opinion, the ALJ described Plaintiff's hand limitation by stating, "Brown also cannot perform work where she would have to engage in repetitive, fine manipulation with either hand." (Tr. 22). Plaintiff maintains that this articulation of her hand restriction is ambiguous because the term "repetitive" is not used in the Dictionary of Occupational Titles ("DOT") to describe work involving the use of one's hands or fingers. Instead, the DOT describes the amount of fingering or hand usage a particular job requires by referencing the following terms: not present, occasionally, frequently, or constantly. Brown further asserts that "the term 'repetitive' is *qualitative* rather than *quantitative*" and that the ALJ's RFC did not sufficiently identify the frequency at which Plaintiff could engage in fingering in terms used by the DOT. (Pl.'s Br. at 15).[3] Consequently, Plaintiff purports that the

---

[3] For example, Brown explains that a person "might be able to perform repetitive, fine manipulation (i.e. fingering) 'occasionally,' 'frequently' or 'constantly.'" (Pl.'s Br. at 15).

9

VE's testimony could not provide substantial evidence to support the ALJ's decision because the hypothetical question posed to him included this ambiguous depiction of Plaintiff's hand limitations.

During the hearing, the ALJ questioned the ME regarding Brown's hand limitation as follows:

Q: And the fine manipulation limitations, how would you phrase that?

A: The ability to use her hands and her fingers for fine manipulations.

Q: Can she do it - - use - - can she fine manipulate occasionally, not at all, or - -

A: Oh, yes. Oh, yes. That is not a limiting factor, it's just the repetitive need for doing that, for example, in making change in a cash register. Certainly, perhaps even the need for computer or typewriter work.

Q: So no repetitive fine manipulation? Is that correct?

A: That's correct.

Q: That's the way we should phrase it? Okay.

A: That's correct.

Q: But she could occasionally - -

A: Yes.

Q: - - engage in fine manipulation, but not on a repetitive basis?

A: That is correct.

(Tr. 88-89). In the hypothetical question ALJ Staples presented to the VE, he stated that Brown "could occasionally engage in fine manipulation, but not on a repetitive basis." (Tr. 93).

Plaintiff's argument that the ALJ's description of her hand restriction is ambiguous lacks merit. During the ALJ's examination of the ME, the ALJ confirmed Brown's hand capabilities in

10

terms utilized by the DOT. The ME opined that Plaintiff was capable of engaging in fine manipulation occasionally, but not on a repetitive basis (Tr. 88-89). Although neither the ALJ nor the ME defined what constituted as "repetitive", such clarification is not warranted because the ME unequivocally confirmed that Plaintiff was capable of engaging in occasional fine manipulation. *Id.* Read in context, the import of the ME's testimony on this subject was that Plaintiff could not perform tasks which required more than occasional fine manipulation. Dr. Brahms's statement that occasional fine manipulation "[wa]s not a limiting factor" illustrates this point (Tr. 88). He explained that Brown could engage in occasional fingering but could not work in a position which required repetitive or continuous fingering – such as that which would be required of an employee working with a cash register, computer or typewriter. *Id.* It is apparent to the Court that Dr. Brahms was intending to draw a distinction between the types of positions which Plaintiff could perform – those demanding occasional fingering– and those which Plaintiff could not perform – those requiring repetitive or continuous work with the hands (i.e. working with a cash register, computer or typewriter).

Plaintiff's brief cites to several cases involving an ALJ's use of the term "repetitive". However, the undersigned does not find these cases persuasive. For example, Plaintiff quoted the Eighth Circuit in *Renfrow v. Astrue*, 496 F.3d 918 (2007), as stating "[f]requent reaching and handling requirements are not equivalent to repetitive use of the right hand." (Pl.'s Br. at 16). But, the court made this statement to reject the claimant's contention that her inability to perform repetitive activity with her right hand precluded frequent reaching and handling. *Id.* at 921. Thus, it is not clear to the Court how this case bolsters Plaintiff's claim.

11

Although Plaintiff identified case law in which courts ruled that the term "repetitive" had an ambiguous character, these cases are distinguishable from the instant case.  Plaintiff relies upon *Harrington v. Astrue*,[4] *Gardner v. Astrue*,[5] and *Alexander v. Astrue*[6] in furtherance of this argument.  The plaintiff in *Harrington* asserted that the ALJ's ruling that she could not do *repetitive* grasping somehow implied that she could do *frequent* grasping.  *Harrington*, 2008 WL 819035, at *5.  In responding to the plaintiff's argument, the court suggested that the DOT used the term "repetitive" to refer to the temperament of a job rather than the physical demand of the job.  *Id*.  Yet, it cited no authority for this position and ultimately affirmed the Commissioner's decision after rejecting Plaintiff's argument.  *Id.*  As previously addressed, the Court is unconvinced that the ME's use of the term "repetitive" referred to the temperament of the jobs in which Brown could perform, and declines to order remand based on the *Harrington* court's interpretation of the language used in the DOT.

In *Gardner*, the Ninth Circuit ordered remand of the ALJ's decision because the ALJ's RFC finding employed different language to describe the claimant's limitations than the hypothetical question given to the VE.  *Gardner*, 257 F. App'x at 30.  Plaintiff quoted a footnote from this case in which the court noted that the ALJ's use of the word "repetitively" appeared to refer to a *qualitative* characteristic of the job rather than a *quantitative* characteristic.  (Pl.'s Br. at 16).  While the Ninth Circuit noted this distinction, it explicitly stated that its holding was not based upon this point.  *Gardner*, 257 F. App'x at 30.  Unlike in *Gardner*, the undersigned is not persuaded that the

---

[4] No. 1:06CV936, 2008 WL 819035 (M.D.N.C. Mar. 21, 2008).

[5] 257 F. App'x 28 (2007).

[6] No. 07-4913, 2008 WL 4091684 (E.D. Pa. Sept. 2, 2008).

ME's use of the word "repetitive" reflected a qualitative meaning.  Instead, the ME's testimony implies that he was indeed using the term "repetitive" to explain the quantity of fine manipulation which Brown could perform.

Similarly, in *Alexander*, the district court found that there was an inherent ambiguity in the term "repetitive" based upon the ALJ's instruction to the vocational expert indicating that the claimant "could not perform jobs involving 'repetitive' motion involving the wrists." *Alexander, 2008 WL 4091684, at \*5*.  The court went on to explain that neither the ALJ nor the vocational expert clarified the meaning of repetitive. *Id.* at 6.  However, the case now pending before the Court does offer some insight into what the ME and ALJ meant by "repetitive."  The ME testified that Brown could perform occasional fingering but not repetitive fingering.  The examples the ME stated provided context to understand the essence of what he was communicating regarding Plaintiff's hand restrictions.  Unlike in *Gardner* and *Alexander*, the undersigned is not left in the dark as to what connotation Dr. Brahms intended by his use of the word "repetitive."

Although ALJ Staples failed to question to the VE regarding whether the information he provided was consistent with the DOT as required by Social Security Ruling 00-4p, the ALJ's error was harmless.  As stated by the court in *Renfrow*, this failure is harmless when no such conflict appears to exist.  *Renfrow*, 496 F.3d at 921.  Here, Dr. Brahms confirmed that Plaintiff retained the ability to perform fine manipulation occasionally.  ALJ Staples accurately communicated this finding to the VE (Tr. 93).  In turn, the VE identified three jobs which satisfied Brown's RFC, including her hand restriction – charge account clerk, weight tester, and surveillance system monitor.  Neither the position of a charge account clerk, nor the position of a weight tester require more than occasional fingering according to the DOT.  *See* DICOT 205.367-014; *see also* DICOT 539.485-

13

010.  Moreover, the job of a surveillance system monitor does not necessitate the ability to perform any fingering.  *See* DICOT 379.367-010.  Accordingly, all of the positions identified by the VE conformed with Plaintiff's ability to engage in work which required occasional fingering.  Thus, ALJ Staples's failure to question the VE pursuant to Social Security Ruling 00-4p was harmless, as the VE's testimony was consistent with the DOT.

Finally, to the extent that Plaintiff challenges the phrasing the ALJ used to describe Plaintiff's hand restriction in his written opinion, the Court dismisses Plaintiff's claim.  In ALJ Staples's written opinion, he wrote, "Ms. Brown also cannot perform work where she would have to engage in repetitive, fine manipulation with either hand." (Tr. 22).  This statement only partially reflects what the ALJ told the VE.  The ALJ actually described Plaintiff's restriction to the VE as retaining the ability to "occasionally engage in fine manipulation, but not on a repetitive basis." (Tr. 93).  As previously discussed, the ALJ's statement to the VE was an accurate recital of the ME's finding and sufficiently conveyed Brown's capabilities to the VE.  Although the ALJ's written decision does not mirror the language he used to describe Plaintiff's hand restrictions in his hypothetical question posed to the VE, this distinction did not effect the outcome of his decision.  The Court, therefore, agrees with Defendant that any apparent problem with the language used by the ALJ to describe Plaintiff's hand restriction in his written opinion was not harmful to Plaintiff because it did not undermine the validity of the VE's testimony.  *See Campbell v. Comm'r of Soc. Sec.*, 227 F. App'x 470, 471 (6th Cir. 2007).  Accordingly, the undersigned finds that the ALJ's decision was supported by substantial evidence.

14

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court AFFIRMS decision of the Commissioner.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 20, 2011.